Thank you. May it please the court, Mike Charnoff and Scott Perry on behalf of the family. Michael Taylor was a healthy man in his mid-20s in April of 2016 when he went to Virginia Hospital Center for minor routine removal of his gallbladder. Surgery was unremarkable performed by Dr. Booth. After the surgery, Dr. Booth wanted to order continuous pulse oximetry. The reason she wanted to do that is because Michael Taylor needed some heavy narcotics overnight to deal with the surgical pain and because he was seriously suspected of suffering from sleep apnea. As a result, there was a danger he could stop breathing in the middle of the night. So instead of spot check pulse ox, she ordered continuous pulse oximetry. Pulse ox is a simple plastic device. It fits over your finger, flips to your finger, measures the oxygen level. If it drops to a dangerous level, the alarm goes off. The nurse comes into the room, wakes up Mr. Taylor, wake up bud, start breathing, or the patient's unresponsive, you apply supplemental oxygen. It is a very simple way of preventing a disastrous result, which is what happened here. Dr. Booth testified without dispute she intended to order continuous pulse ox. At 4.34 in the afternoon, that is what she entered onto the computer entry screen, one of two defects in his product liability. When she entered it, the time displayed said 4.34 in the afternoon. She believed it was going to be taken effect immediately as soon as he's wheeled off to the recovery floor and to design deepening. VHC had implemented a default time. Default times are controversial and are criticized by the experts in this case. But if you are going to apply a default time, in this case 10 a.m. the next day, if you're going to apply a default time, it must be displayed to the user, which in this case is Dr. Booth. She punches in continuous pulse ox. The time comes on the computer. That's not what the computer is telling the nurses to do. The nurses see to begin continuous pulse ox at 10 in the morning. Shortly after 10 in the morning, Michael Taylor was found unresponsive in respiratory arrest and suffered massive brain damage. He almost died. He didn't die. Instead, he's in the condition he's in today. He's an incomplete paraplegic. He cannot toil himself and not walk independently. This is his life now. The second defect is the order summary screen. Buried at the bottom of several scrolled pages was language indicating the correct start time, meaning according to the computer. But as testified by Dr. Booth, she didn't see it. And as testified by two of our seven expert witnesses who are world leading experts in these areas, usability and informatics in the EHR field, electronic health record, testified, you cannot design the page like that. You have to be able to see all of it on one page, or you have to gray out the button at the bottom of the page so you cannot say, I approve this order, unless you've actually gone through and reviewed the orders. Usability is defined in the expert reports. I know this is a massive record, but I would respectfully ask at some point if the court would look at pages 65 to 77, the joint appendix. That's Dr. Elkins' report, exclusive of his extensive curriculum vitae and appendices. And Dr. Capel's report- The summary screen had the correct time in which the blood oxygen monitoring device should be applied. Is that correct? No, Your Honor. It had the incorrect time. The correct time would have been immediate. It had the time that the default entered by BAC, which is the hospital, that they had entered as the default time. It did reflect the default time of the hospital. It did not reflect the user, which in this case is Dr. Booth, what she intended to happen here with the care of Michael Taylor. And so, it's either or worse. And let me address this. There's a case that we referenced in our reply brief, which is the Cedar versus Reston Town Center case. It actually came from this court shortly after we filed the opening briefs here, but before our reply brief. And there, the court said that this court considers the expert testimony and reports as part of the record. And that's where the trial court hadn't ruled very much. So, let me return maybe where I should have started. This is a summary judgment. Summary judgment is a standard that's endlessly litigated, although the standard has not significantly changed in decades. Our burden as the non-movement is a burden of production. It is not a burden of persuasion. It's not our job to convince our particular district court judge that we win. All we need to do is produce evidence, and we produce rings of it, factual evidence, expert evidence. And under the Cedar case, that is what this court needs to accept in its de novo review of what the jury could choose to credit or discredit. So, you had two claims, two kinds of claims, right? Two defects, correct. I thought one was a defect and one was a failure to warrant. Well, correct. Legally, yes. There's two defects, and then there's... So, maybe you tell us about the expert testimony with respect to each of those. Of course. I thought I only noticed expert testimony with respect to one of them, so you inform me. Sure. I think it's relatively straightforward. From the defect perspective, usability is, or human factors engineering is another term for it, has been employed for decades by NASA, the airspace industry, commercial airlines, and by the healthcare industry since the late 1990s. The whole purpose is to create software that is intuitive, easy to use, that reduces errors. One of the ironies in this case is that this is an error that could not have occurred before the era of the electronic health record, okay? I thought that your opponent claims that hospital had used the software for six years and had not lodged a complaint similar to those with the manufacturer. Six years of use without lodging a complaint with the manufacturers, that's correct. That doesn't help you, does it? That's a fact that if I were the other side, I'd argue to a jury, but it's a factual question. This is a landmine that existed in this software for years. So what we want you to do is to tell us what you would be arguing to the jury, okay? So they have that, and what do you, I think that's what Judge Wilkinson's betting at, what do you have? I thought I'd ask you that question too. Let me try to address that. What should have been done is quite simple. The defect is hard-coded into the software. In other words, there's some modifiability allowed, but you can add default times, you can change what those default times are. No, I have not been clear. I'm wondering what kind of testimony or evidence or records or something else you had which said that was the proper procedure. If, as Judge Wilkinson says, there's never been a complaint, how do we know? Sure. So there's three ways to demonstrate product liability in Virginia. It's disjunctive. The district court seemed to struggle with that. First prong is a governmental standard, which we were not pursuing in this case. The court got quite involved in trying to discuss that. Second is industry standard, and we put up both Dr. Elkins- I want you to come back because it would have been in, you could have introduced this in the years. Either there has or there hasn't been a complaint similar to Lowe's. Now, that's information. There was voluminous discovery in this case. And it would be very much to your advantage to say, wait a minute, there were other complaints on Lodge. But it's very unusual, it seems to me, for something to be used for six years without incident or complaint. And for nothing in the summary judgment record to reflect there is a complaint. And the other question I have is, I would think that a lot of other hospitals are using this same software, which seems to address a very common problem during patient recovery. And I kept looking for evidence of similar incidents or similar injuries arising or involving the same problem. And I'm puzzled because if a product is deficient, the hospital would have been made to- the hospital would have complained, or there would have been other incidents in the wide universe. You know, the product's liability bar on both sides. They're full of- they know what each other's doing. And if a product is under assault or in trouble, there would seem to be a number of suits brought against it, or a number of incidents. But I don't see that here. And you have to take into account, if there isn't a genuine dispute of material fact, you can- I mean, what happened here was very, very sad. But the question you have to ask is, why should this be laid at the feet of the manufacturer when there's no- when there are no similar incidents, no prior complaints? I'm having difficulty with that. And you don't want to discourage the development for useful products. And I'm sure this product has been very helpful in assisting in plaintiff's recovery. But I'm surprised, given the grapevine that is the product's liability bar, that we haven't seen more of similar incidents occurring. Judge, there are similar incidents that Cerner was aware of through the MOD report, which is government database, where they reported other people, including physicians who are users, complaining of disoriented water entry mechanism for dealing with default start times, causes double testing when it's not needed, and no test when it is needed, and the results in delays that are life-threatening. There was a second MOD report that said that the complexities of poor usability of this particular CPOE merits investigation, surveillance, and possible recall. Was this the same defect identified by Mr. Laird? Yes, default times. Correct. Also, again, this is all in the expert reports, and we tried to quote them selectively, helpfully, in the briefing. The user report cited by Dr. Capel in the MOD database says, a defect in Sorin's user interface involving the default start time caused delays in care that are life-threatening and costly. Moreover, in one complaint, another user, which is a physician, complained of similar frustrated issues with orders defaulting to times that were not intended by the ordered physician. So this is a known defect that is being reported by various both mandatory and voluntary reporters to the MOD database, and Cerner produced tickets to us for people that complained that you couldn't make out certain items on the entry screen, or that the default times were causing problems. The fact that no one had died before, nor had suffered a brain injury before, was simply luck. And remember, one of the other criticisms of this particular CPOE is that there's too many items on the menu. This was sort of the perfect storm. You had a key, the doctor tried to enter it, and it came in as continuous one-time, continuous pulse oximetry. That's what triggers the default at 10 in the morning. So the only way that the hospital would have known about it was this particular odd mix of menu choices, coupled with default time that's not displayed on the screen, which is the hard-coded defect from Cerner, then results in the patient actually suffering an oxygen deprivation event overnight. All of those things had to line up to manifest before this particular tragedy happened. But it was there. That's why it's used in landmine damage. The defect was there the entire time. And Mr. Taylor, unfortunately, is the one that triggered it. I understand, Mr. Chernoff, but I want to raise a different subject because another thing that really troubles me about this record is the trial court's misapplication of the Virginia law of proximate causation. And I haven't heard you say anything about it, but it seems to me that that is a threshold error in this case that needs to be addressed. Agreed, Your Honor. I'm dipping into my response time, but let me just briefly address it. I think it's worth addressing if there's a threshold question. Agreed. It is absolutely, Your Honor, proximate causation is always a deterrent. Now, I'm talking about the fact there may be more than one proximate cause, and that it is not the plaintiff's burden under Virginia law to disprove other potential causes. It's only when there's a superseding cause do the other causes come into play to negate proximate causation under the plaintiff's theory. And you haven't addressed that. It seems to me that's a major part of your case. It is, Your Honor. Let me address it briefly. I'm trying to answer the court's questions as best I can. Two related points. One is proximate causation is always a jury question. It's not appropriate for the district court to be weighing evidence or disregarding evidence regarding proximate causation. Second, and coming from the other angle, the reason that we found an affirmative motion for summary judgment to prevent superseding cause argument is exactly that. You cannot use this empty chair argument. There is abundant evidence, both factual and expert evidence, that this defect is what caused the order to not go through the nursing home. And the court doesn't use the word superseding cause. It didn't undertake an analysis of superseding cause in its ruling, did it? It did not. Okay. I just wanted to make sure I didn't miss that. You did not. Virginia law and the jury instruction that encaptures long-standing Virginia law says there can be multiple causes. And frankly, it's all part and parcel. In other words, a design defect in a car might exist, but unless you're driving it, it might never manifest. The whole point is that this software is designed for doctors to input orders and then for nurses and other tax and health care providers to follow it. And so the notion that they're somehow disconnected doesn't make any sense in the law, doesn't make any sense in the medicine, and the district court completely misapprehended the entire error. I do want to reserve two minutes of my time. All right. Thank you. Okay. Good morning. Please. Please proceed. Your honor. The plaintiff in this case alleges two specific defects. Plaintiff alleges the ordering screen should have auto-refresh the start time when a physician shows an ordering frequency with the start time other than now. And plaintiff claims that the new start time only displayed on the order list where it was easy to miss because the list could be too long. Now plaintiff has tried to liken this situation with brakes and a pedal of a vehicle that they get where it's quote unquote hard-coded. And they go to pains to explain that it's not like the temperature settings that are configurable. Well, that's not the case here. The situation here, at least with respect to the ordering screen, Virginia Hospital Center bought and knew what it was buying. It was buying a template from Cerner where it would then configure its system to the way that its physicians practice medicine. The system as delivered to Virginia all of the orders would have started now. It was Virginia Hospital Center along with its team of physicians and other clinicians that chose the frequency once to mean that that order would start at 10 a.m. the next day. If VHC had not made that configuration choice, the order would have started now. VHC could have configured the system such that when the once frequency was chosen, a warning sign could have popped up. That option was available. VHC chose not to use that. Plaintiff here has cited no industry standard that suggests it's unreasonably dangerous to not have the ordering screen refresh the time and nor could they because the... Well, Councilman, are you arguing that VHC's decision not to put a default in is a superseding cause in the case? What are you identifying? It seems to me in order to negate their theory of proximate causation at the summary judgment stage, you have to identify as a matter of law a superseding cause. What have you identified as a superseding cause? Well, on that point, Your Honor, I think that the proximate cause and cause-in-fact case law of to quote-unquote take serious account of other potential causes or offer an explanation for why the proffered alternative causes were not... It does not. It does not. No, Counsel. The jury instruction, the model jury instruction in Virginia reads there may be more than one proximate cause. It is a proximate cause which in continuous sequence causes the event unless interrupted by a superseding cause, which in and of itself is the cause of the complaint injury. That's the law in Virginia. And if you could please address what your theory of superseding cause is in this case. I didn't really see it in your brief. And it seems to me that the court really made a serious error of Virginia law here in its formulation proximate causation. And it may be you've got a really strong case because of all that's going on. And their case may be a loser in terms of how a jury perceives this because a lot of stuff went into the mix. I agree with you. But in terms of proximate causation, this report was wrong. And it seems to me that you have to show that this record contains evidence of a superseding cause as a today. And if you don't, you need to tell us why. Absolutely, Your Honor. Respectfully, I think that the portion of causation under Virginia law that you're speaking about is proximate cause. It doesn't address cause and fact, which under very clear Ford Motor Company versus Boomer 2013, a plaintiff is required to prove with reasonable certainty that but for the defendant's have suffered the harm. That is plaintiff's burden. That is a completely separate and well, it goes with causation. But the proximate cause, obviously, you can have more than one proximate cause. But in order to get the cause in fact, you must prove with reasonable certainty that but for the defendant, there's no such thing as cause in fact, in the jury instruction on proximate cause. There's no such thing. I think it's a component. Unless the laws change since I left the Supreme Court of Virginia, it's quite possible that it has. And if so, if you could update. Yep, absolutely. I think Ford Motor Company versus Boomer. It's 736. Se. Second, 724. 2013. Right. That's not the Virginia Supreme Court. Yes, it is. Excuse me. Okay, well, then I then I have. Okay, I need to get back to you on that. Because I think I don't think they were ruling on superseding costs. They were not ruling on superseding. Exactly. I agree. Okay. So in terms of superseding costs, I think. So let's dial back then. And I'm sorry that I misapprehended the source of your site. But you still have to identify a superseding cause as a matter of law. Okay. In order for you to prevail on summary judgment, do you not? I don't agree with that, Your Honor. Okay. I think that initially, it is plaintiff's burden to come forward by preponderance of the evidence to prove that but for the defendant's. Right. Assuming that they have shown a proximate cause, then don't you have to show. And I understand your argument as to why they haven't shown a proximate cause. But once they have shown in the record a proximate cause, don't you have a duty then to show or don't aren't you required to show a superseding cause as a matter of law in order for you to prevail on summary judgment? I agree with that. Okay. I think that's correct. But for the reason that this judge did, the judge in this case didn't address superseding costs, did he? Judge Hogan? Well, the court did not. Right. So how have you prevailed as a matter of cause when the district court didn't even address whether there was a superseding cause? Well, Your Honor, we didn't have to get to superseding cause because the court found plaintiff could not even offer evidence of proximate cause. They could not meet that initial verdict. So what you just described, Your Honor, was the assumption that they could in fact prove that. And that's what the district court explicitly found they could not prove. They couldn't prove it because their experts could not and actually explicitly did not consider all of the other multiple sources that could potentially be the potential causes. And that's why it's important to go back to the Ford versus the Boomer case because again- Weren't their experts essentially saying that this product did not meet consumer expectations? I mean, wasn't that the thrust of what their experts, whether you accept it or not, whether it's strong or not, isn't that what the experts were saying? Can you say that one more time? Pardon? Can you say that one more time? I apologize. Yeah. No. Isn't what the experts were saying that the product failed to meet reasonable consumer expectations? And that was the prong that they sought to prove failure to warn under. Now, you could say that their evidence wasn't strong, but it certainly was disputed on that part, was it not? So a couple of things, Your Honor. So the consumer expectations there, there has to be some actual meaningful standard that you can gauge that against. With respect to causation, isn't your argument that plaintiff's view of causation in Virginia law certainly recognizes multiple, that there can be multiple causes. But your argument would have to be that the plaintiff's view of causation is simply not plausible enough or realistic enough to create a genuine issue of material fact. And the overwhelming weight of causation does not lie with the manufacturer, but with the physician and with the hospital staff and the like. I mean, that's what you, it seems to me, that's what you have to say, that the plaintiff's view of causation is simply not a realistic one. And part of your case would have to be, I don't know whether this is disputed or not, the fact that the hospital had used this for six years without reporting, without complaining to the manufacturer, and there's an absence of many similar incidents. But you need to go sort of realistically at the whole question of causation and say why the plaintiff's view of causation doesn't create an issue of to do. And you need to sort of maybe put aside the terminology and just get to the practicality of it, which is that their view of causation simply does not rise to the level of genuineness needed to create an issue of tribal facts. So why don't you talk about that? Yes, Your Honor. So the record's clear. There is no dispute that the system was used for six years with no incident. The MAUD reports that counsel discussed, those were not weighed by the district court, but were in fact, the court concluded that it couldn't rely on those for previous notice because plaintiff's experts were unable to say how those systems were configured, such that they had no basis to say whether or not the defect was the same or the events giving rise to the particular circumstances were substantially similar. Going back to your question, Judge, as to causation, I think it's a proper analogy and hypothetical would be like in a medical malpractice case or a product exposure case where you have to rule in and rule out particular possible alternative causes. And if plaintiff would have alleged or made the argument that it was Cerner's EHR plus the doctors, plus the nurses, plus all of these other factors that were a cause, you could have multiple causes, that would be, we wouldn't be here today. But they never did that. They instead came forward with one claim against Cerner, said you are the but-for cause, which as for all the other experts had considered and it is other multitude of possible causes. Okay, but when getting back to the Ford Motor case, and now I remember it, that was a mesothelioma case, wasn't it? Okay, so the issue wasn't a system that required input. You know, you've got a lot of moving parts in your case, and that's why I think it makes it really hard for the plaintiff in front of a jury when you have a lot of moving parts. But in that case, it was, you know, what was the cause of the mesothelioma? Okay, was it caused by something else or was it caused by this? In other words, was this really the proximate cause? So the court in that case wasn't talking about a superseding cause, it was talking about the quantum of proof required to show proximate cause, was it not? I know you've airlifted the quote and the quote really helps you, but when you put the quote back into context and you don't have an issue of multiple causes that undeniably contributed to this situation or this injury, okay, you have a situation of what was the other things that contributed to it, okay? And so it seems to me that, you know, you get back to the original problem that you had in the case, which is the fact that the court wasn't analyzing superseding cause. Now you're saying, I want to make sure I understand you correctly, you're saying none of that matters. The court may have bungled the law of approximate causation, may have failed to address superseding cause, but notwithstanding all that, the plaintiff's evidence was insufficient to show it was a proximate cause of the injury. Is that correct? That's correct. Okay. That's correct. Because I think the case law and the Boomer case agree it was a mesothelioma case. The court was confronted with whether or not to adopt a substantial cause analysis rather, or substantial cause approximate cause rather than but-for. And the court said, we're going to continue to use the but-for cause for all cases except for those where there are multiple approximate causes. Plaintiff here hasn't alleged there are multiple approximate causes. But I mean, Judge Keenan is certainly more conversant in Virginia law than any of us here. And I respect that. And I'm also prepared to believe that the district court did err and make an error in not addressing the question of superseding cause. And I'm certainly not averse to pointing that out. But plaintiff is still left with a burden here of creating an issue of triable fact as to causation. And the problem I have is with so many thousands of people who have used this system correctly. And plaintiff's view is, well, the doctor was just too busy to notice what was on the summary screen, that the health professionals were too busy to notice. Well, that doesn't seem to me to help their case. This particular device has been utilized probably hundreds of thousands of times correctly and has helped with the process of patient recovery. And my thought is that given that there are so many other people who were responsible for what happened here, doctors, nurses, staff, and I can't believe that they were as neglectful as they were. And that, to me, just doesn't, it still doesn't point to a theory of causation that would say that the manufacturer, and I'm just wondering that the manufacturer was the cause here, and it's still plaintiff's burden to create an issue of triable fact. And I realize they're experts and everything, but this whole thing could have been cleared up so easily with just a little bit of attention on the part of the hospital staff. Now, that, it seems to me, is what you have to argue. Not that the district court was correct, because I defer to Judge Keenan completely on that, and that it was not correct in failing to address the issue of superseding clause. But even given that failure, is there issue of triable fact here as to causation? And there is, Your Honor. I think that the record demonstrates, even setting aside the actual EHR that was used here, setting that aside, Dr. June was one of Mr. Taylor's physicians. He entered a handwritten note that Mr. Taylor should receive pulse oximetry. The record is that it was either not conveyed or it was ignored. Secondly, the... What does that prove with respect to this plaintiff and this case? Because it seems to me that that shows that maybe there was negligence by something else, somebody reading the chart. I don't know what that proves here. You can't... Well, I think it goes back to you can't prove but-for causation where you haven't actually considered or addressed any of the other are the potential causes and say either why they are potential causes or that they're not. Well, was that done? I thought your whole dialogue with my colleague demonstrated there wasn't done. So you're conceding now that the analysis has reduced the court's... I'm saying that there are multiple reasons why the district court could have come to the conclusion that they couldn't meet causation because they hadn't considered and they hadn't come in and just claim a singular event is a but-for cause and completely ignore all of the other potential causes. Isn't a problem perhaps, and I'm not sure, the fact that the district court had a pending Dawbert motion and didn't consider it. So don't we have to consider the record as it is now without and accept these experts at their face value even if perhaps they would not have prevailed on the Dawbert motion? So I think to that question, Your Honor, the experts explicitly said they did not look at any of these other potential causes. Recall that Mr. Taylor initially settled his malpractice claim with the hospitals, subsequently brought this case as a brand new case just against CERN. So it's the experts did not consider Dr. June's order, all of the other potential possible alternative causes. Well, did they have to in order to determine whether this was one of several proximate causes? Absolutely. You can't say something is a but-for cause if you don't consider the possibility of anything else. That's not the way that any of the... No, I'm just thinking about in terms of summary judgment. I guess I'm a little hung up here on the fact that there was no Dawbert hearing. And these experts seem to say enough to push it just barely across the line on this record, even though they may not have held up on Dawbert. And so what do we do? Well, I think you can affirm because the district court recognized that simply identifying one potential cause out of a myriad of other potential causes can never meet the but-for standards set forth by the Virginia Supreme Court. Are there any further questions? All right. Well, let's turn to Mr. Sharnoff who has some rebuttal time. Thank you. And I will try to make the most of my short time. Just beginning with the proximate causation issue briefly. We did refer to the case from our library and it says, quote, where concurring negligence of the two produces a single injury and each is a proximate cause, they are both liable. And again, this is a case that goes back over a hundred years in Virginia. I want to address this notion that answer the last question that was addressed. Virginia law does not require our experts to rule out causes that are outside what caused the injury here. Your expert does have to say affirmatively that this was a but-for cause. Correct. And they have done that. And I'm also going to point out that in their respective reports, Dr. Elkin and Dr. Capel, they made it clear that in forming their opinions, they were aware of and considered the actions of Dr. Booth, the hospital and the VHC nurses. And that they've made clear that none of their actions affected the, their opinion that Soren's defects was the proximate cause. Yes. I'd refer the court to the joint appendix, pages 67 and 68, which is one of the expert reports. It's Dr. Elkin. And also take a look at 259 and 261 of the joint appendix, which is some of Dr. Briefly, the court to 2956 to 2957. Again, these are all where the experts consider the actions of the healthcare providers. And again, and I know I made this point earlier, but when it comes down to it, it's all part and parcel. This is not in a vacuum. The whole point of electronic health records is to make it less likely that you make errors, that there's more accuracy, not that there's less. There is a passage in the expert reports that specifically says this type of error did not and could not happen without the introduction of this deed. It's absolutely about poor cause. Our client would not be in the condition that he's in. Okay. And, and Mr. I'm not sure how to pronounce his name. And I apologize. Rolcott is, thank you, is, is, is so sticking with that line from Ford Moodicum. And, you know, I pointed out the factual distinction that you didn't have a lot of different causes at issue. And he's saying that doesn't matter. Would you like to address that? It doesn't matter. It's not what the law said. The law says that multiple approximate causes can exist. This is why we've had the jury instruction we've had as long as we have. The reason, and again, and I want to address this briefly, we filed our own summary judgment, which was non-dispositive, but as to the they have not elicited the factual evidence, certainly not the expert evidence that they would need to mount a superseding cause defense. And perhaps it's one of the reasons that the district court perhaps didn't address it, but those experts clearly, clearly won't qualify. We'll get there when we get there. I'm sorry. You go ahead. No, no. Once the district court jumped the track on proximate cause, and thought that it needed to rule out these other causes, then I guess if you accept the district court's analysis, it wouldn't have had to get to your motion, would it? And let me make sure I understand your question. If they would have accepted that we'd already made the... Yeah, I mean, I agree with you that the district court misanalyzed the law of proximate cause. But if some of the other judges disagree with you, then where are you left with the district court's failure to address your motion? In other words, is it really a problem if they disagree with you on the primary? No, I think I understand your question. Give me a moment. I'm sorry, let me... You had another question? You keep talking about there can be multiple proximate causes. And I don't think anybody disagrees with that. There absolutely can be multiple proximate causes under Virginia law. But Virginia law also, product liability law, doesn't require the safest conceivable design. And I'm not sure that the question of design defect has ever been located with enough precision. And even given the fact that there are absolutely multiple proximate causes, that doesn't relieve a plaintiff of the burden of showing an issue of triable fact as to the cause, as to the manufacturer's role in the chain of causation. Because causation is a crucial element in your case. It's absolutely crucial in all products liability cases. And what troubles me is that even apart from the design defect, which is sort of hazy in my mind, or the failure to warn theory, which I'm not sure would have corrected anything, the question still as to causation is whether your view of it is plausible. And on this point, given the large number of people on the front line who were responsible for something as important as blood oxygen monitoring, to lay this at the foot of the manufacturer when there were repeated oversights and sloppiness and everything else on the part of the hospital staff and the manufacturer, has the deep pocket here. And I know that, as I say, what happened here was very sad. And I realized that the $2.2 million settlement, Medicaid may pay the medical expenses, but I understand that there are a large number of non-medical expenses. And I understand why you want to get at those. And Cerner is the party with the deep pocket. But I guess it all comes down to the fact that I think the question of whether or not it's plausible is really thin. It's just a judgment call. If I thought it was stronger, I would say, this should go to the jury. And I'm not prepared to say that the district court handled it correctly or it did commit the errors that my friend, Judge Keenan, has pointed out. But granted, all of them, it seems to me that the evidence as to a critical element of your case is pretty thin. Judge, my time is up. May I briefly respond? Sure. Thank you. The health care providers here were misdirected. They were misdirected by the product feedback. Dr. Booth intended and testified without contradiction. She intended for this patient to get continuous pulse ox. That was subject to a default. Those nurses were not ordered to actually begin the care until 10 o'clock the following morning. It is a direct but-for causation, but-for this design feedback. This would not have happened. And just to finish my response and direct here to page 12 of our reply brief, we once again summarize the industry standards, specific industry standards that both Dr. Capel and Dr. Elkin refer to, the NISTIR standards and the HIMSS standards. There are specific elements of design that was simple error. When we click out of Microsoft Word, it asks you, do you want to save the document? And a simple pop-up wasn't there at the wrong time, was displayed on the screen, and this horrible thing happens. All right. Thank you for omitting disadvantageous points in the record, but I'm not going to go over it and over it. Thank you very much, Mr. Charnoff and Mr. Okade, and appreciate your presentations. Now we'll move into our last case.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Barbara Milano Keenan